UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TORENDA WHITMORE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 14-986 (RBW) |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION**

This matter is before the Court on the Defendants' Motion for Summary Judgment [ECF No. 13]. For the reasons discussed below, the motion will be granted.

I.  BACKGROUND

In the United States District Court for the Southern District of Mississippi, the plaintiff was tried and found guilty of the kidnapping of Byron Kelsey McCoy and Rahman Anderson Mogilles. *See* Complaint Under the Freedom of Information Act ("Compl.") at 1-2. On September 26, 2009, that court imposed a sentence of life imprisonment. *See id*. However, her sentence was modified on July 12, 2011, *id*. at 2, and the plaintiff now is serving a 292-month term of imprisonment. *Id*.

The plaintiff submitted the following initial request to the Executive Office for United States Attorneys ("EOUSA") for certain information pertaining to her criminal case:

>  1. Plea Agreement for Whitmore prepared on April 15, 2009[,] from [Assistant United States Attorney] AUSA Golden ([Document] 250 [at] p.3)

1

>   2. Any and all other Pleas prepared for Whitmore from [the] AUSA['s] Office given to Whitmore's counsel, including letters about the plea ([Document] 240-2)
>
>   3. Police Records from Jackson County[, Mississippi,] in regards to the arrest of Torenda Whitmore, Eddie Pugh, [and] Barron Borden on October 8, 2008, including but not limited to [Exhibit] D-6 ([Document] 192 [at] p. 28).
>
>   4. Audio Recordings for interviews conducted by [the] Federal Bureau of Investigation[] in listening format such as MP3 for Torenda Whitmore, James Pugh, Barron Borden, and Ramone Mogilles, along with written transcripts.
>
>   5. Gas receipt from the Chevron Station in Long Beach, Mississippi, Government Exhibit 76. ([Document] 186 [at] p. 229).
>
>   6. Any and all evidence associated with the Chevron Gas Station obtained by the Federal Bureau of Investigation or any other Police, Sherriff's [sic] Office, [the Bureau of Alcohol, Tobacco, Firearms and Explosives], or other agency local or federal. Including any video or audios, interviews, and names of witnesses and [the] owner of the Chevron Gas Station to verify video footage provided to any police [officer] or agency.
>
>   7. Any and all email communication[s] regarding investigation of this criminal case between [the] Federal Bureau of Investigation and any other police [officer] or agency.

*Id*., Ex. (Freedom of Information Request dated July 3, 2013) at 1-2.  The EOUSA assigned the matter a tracking number, Request Number 13-2519.  Defendant[s'] Memorandum of Points and Authorities in Support of its Motion for Summary Judgment ("Defs.' Mem."), Declaration of John F. Boseker ("Boseker Decl."); *id*., Exhibit ("Ex.") D (Letter to the plaintiff from Susan B. Gerson dated July 30, 2013).  The plaintiff's subsequent inquiry as to the status of her request, *see* Boseker Decl., Ex. E (Freedom of Information Request dated January 14, 2014), was treated as if it were a new request, and was assigned a new tracking number, Request Number FOIA-2014-01406, *id*., Ex. F (Letter to the plaintiff from Susan B. Gerson dated March 11, 2014).

Only during this litigation did the EOUSA staff discover that Request Numbers 13-2519 and FOIA-2014-01406 were similar requests. *Id.* ¶ 12. "Moreover, it was discovered that the [United States Attorney's Office for the Southern District of Mississippi ("USAO/SDMS")] actually had responded to EOUSA [Request Number 13-2519] through an EOUSA FOIA system e-mail portal on or about September 16, 2013." *Id.* Yet "[f]or reasons unknown this response was not received by [the] EOUSA FOIA and therefore had not been united with the 2013 FOIA file for processing." *Id.* Further complicating matters, the processing of the plaintiff's FOIA request took place not only during a government shutdown in 2013, but also while the "EOUSA FOIA was transitioning to a computerized system ('Access Pro')." *Id.* Access Pro assigned 2014 numbers to 2013 cases in error, and presumably this error occurred in the plaintiff's case. *Id.*

A paralegal specialist at the USAO/SDMS conducted a search of the case tracking system ("LIONS") using the plaintiff's name as a search term. Defs.' Mem., Declaration of Elisa G. Skinner ("Skinner Decl.") ¶¶ 1, 5. The search yielded twelve pages of records, four of which were redacted by withholding only the identities of special agents and the direct telephone number of the prosecutor under FOIA Exemption 7(C). Boseker Decl. ¶¶ 13, 18; *see id.*, Attachment ("Attach.") H. Because the criminal case file had been "stripped" on February 14, 2011, no records responsive to items 2-4 of the plaintiff's request were found. Skinner Decl. ¶¶ 6-7, 13; Boseker Decl. ¶ 13. Lastly, the EOUSA "advised [the plaintiff] to write directly to the named law enforcement entities in her request to obtain the records identified to them." Boseker Decl. ¶ 13; *see id.*, Ex. G (Letter to plaintiff from Susan B. Gerson, Assistant Director, Freedom of Information & Privacy Staff, EOUSA, dated July 30, 2014) at 2.

The plaintiff asks this Court to "[o]rder that defendants promptly release all materials requested . . . , specifically items 1-7," in addition to "a Vaughn Index." Compl. at 8.[1]

## II. DISCUSSION

### A. *Summary Judgment in a FOIA Case*

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citation omitted). Courts will grant summary judgment to an agency as the movant if it shows that there is no genuine dispute as to any material fact and if the agency is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). More specifically, in a FOIA action to compel production of agency records, the agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the [FOIA's] inspection requirements.'" *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)).

Summary judgment in a FOIA case may be based solely on information provided in an agency's supporting affidavits or declarations if they are "relatively detailed and non-conclusory," *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotations and citations omitted), and when they

> [d]escribe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not

---

[1] Generally, neither a requester's identity nor the intended use of the requested records is relevant in a FOIA case. *See, e.g., North v. Walsh,* 881 F.2d 1088, 1096 (D.C. Cir. 1989). Although the plaintiff asserts that "the documents she is requesting will help prove her innocence," Compl. at 3, the Court will not address the plaintiff's FOIA request from that perspective, *see Dugan v. DOJ*, __ F. Supp. 3d __, __, 2015 WL 1090323, at *5 (D.D.C. Mar. 12, 2015) (declining to "address plaintiff's arguments concerning his criminal prosecution or his purported innocence").

4

>controverted by either contrary evidence in the record [or] by evidence of agency bad faith.

*Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v. DOJ*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting *DOJ v. Tax Analysts*, 492 U.S. 136, 142 (1989)).

### B. The USAO/SDMS Conducted a Reasonable Search for Responsive Records

"The adequacy of an agency's search is measured by a standard of reasonableness and is dependent upon the circumstances of the case." *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (internal quotation marks and citations omitted). An agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (internal quotation marks and citations omitted). A search need not be exhaustive. *See Miller v. U.S. Dep't of State,* 779 F.2d 1378, 1383 (8th Cir. 1995). As long as the agency conducts a reasonable search, it fulfills its obligations under the FOIA even if the search yields no responsive records. *See Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (stating that "the failure of an agency to turn up one specific document in its search does not alone render a search inadequate").

To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of its search. *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). In the absence of contrary evidence, such affidavits or declarations are sufficient to

5

demonstrate an agency's compliance with the FOIA. *Id*. at 127. If, on the other hand, the record "leaves substantial doubt as to the sufficiency of the search, [then] summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see also Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999).

The declarant's search for records responsive to the plaintiff's FOIA request began with a query of LIONS, the case tracking system, under the plaintiff's name. Skinner Decl. ¶ 5. This search disclosed that the plaintiff "was a co-defendant prosecuted by the [USAO/SDMS] in United States District Court Case No. 1:08cr00130, USAO Case No. 2008R00796, and Case No. 1:11cv423WJG, LIONS 2011V00395." *Id*. At that point, the declarant notified the Assistant United States Attorney to whom the case had been assigned and a paralegal, whose offices were "in the Gulfport branch of the Southern Division of Mississippi, United States Attorney's Office," that a FOIA request had been made and that, "until . . . notified to the contrary, nothing, either electronic or physical, may be destroyed." *Id*. In response, the paralegal sent the declarant files pertaining to the plaintiff. *Id*. The declarant "copied the file jackets of the criminal case file, 1:08cr00130 WJG, LIONS 2008R0079; the appeal case file, 09-60400, LIONS 2008R00796; and the civil case file, 1:11cv423WJG, LIONS 2011V00395," and copied "discovery correspondence and correspondence from AUSA Jay Golden to James L. Davis III, Esq., dated April 15, 2009, referring to an Amended Plea Agreement with the attached unsigned Plea Agreement for Torenda Whitmore's signature." *Id*. ¶ 7.[2] The declarant prepared a FOIA Form No. 10B to accompany the requested records to the EOUSA for further processing, *see id*.

---

[2] "There was no plea agreement, but only a proposed plea agreement[] (which document was released in full to [the plaintiff])." Boseker Decl. ¶ 15.

¶¶ 7, 13, noting that she "enclosed [a] response to Whitmore's Request No. 1 . . . for a Plea Agreement," *id*. ¶ 7.  However, the file had been "stripped," which resulted in "all unnecessary documents in that file [having been] disposed of in accordance with the practices of the [USAO/SDMS]." *Id*. ¶ 6.  Thus, the declarant found that "no records existed that were responsive to Whitmore's Request Nos. 2, 3, and 4." *Id*. ¶ 7.  Nor were there records responsive to any other item in the request. *Id*.

When the declarant became aware of a separate FOIA request submitted through Access Pro (Request Number FOIA-2014-01406), notwithstanding its similarity to Request Number 13-2519, she "again searched the USAO Case Tracking System, LIONS, under the name of Torenda Whitmore[,]" notified the AUSA of the existence of this additional FOIA request, and had the paralegal at the Gulfport Branch forward that office's files pertaining to the plaintiff. *Id*. ¶ 10. The declarant's LIONS search and review of the files from the Gulfport Branch yielded the same results, yet "[o]ut of an abundance of caution [she] reviewed the files to satisfy [herself] that the request was indeed virtually duplicative of [the plaintiff's] earlier request." *Id*. ¶ 11.  The declarant copied her response to Request Number 13-2519, prepared a new FOIA Form 10B, and forwarded the responsive records to the EOUSA. *Id*. ¶¶ 11-13.

The plaintiff contends that the agency's search "was not a 'comprehensive search.'" Plaintiff's Response to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n") at 7.  She faults the EOUSA for restricting its search to LIONS, *see id*. at 4, and for only "attempt[ing] to contact the United States Attorney's Office in the Gulfport branch of the Southern Division of Mississippi," *id*. at 7. Because the plaintiff "is incarcerated, and does not have the resources necessary to hunt down her criminal records," she puts the burden on the defendant to "conduct a

7

more extensive search than a database." *Id.* at 4.[3]  For example, the plaintiff argues that the defendant could have requested the documents she sought from other agencies, *see id.* at 5, presumably referring to the Federal Bureau of Investigation, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATFE"), and the local sheriff's office, each having been mentioned in her FOIA request.

An agency may rely on the plain language of the request itself and proceed accordingly. *See Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993) (noting that "there is no general requirement that an agency search secondary references or variant spellings," or that "an agency conduct further searches on the basis of unspecified 'clues' in released documents").  As the defendant points out, the EOUSA limited its search to the Southern District of Mississippi "because that was the district identified by Plaintiff in her FOIA request letter." Defs.' Reply to Pl.'s Opp'n to Summ. J. at 5.  And the plaintiff identified her criminal case by number and by court – the United States District Court for the Southern District of Mississippi.  Based on this information, the EOUSA's decisions to refer the matter to the United States Attorney's Office for the Southern District of Mississippi, and to limit its searches to records maintained by this office, were reasonable.  Furthermore, the EOUSA's obligation was to search for records it maintained at the time it received the plaintiff's FOIA request.  Thus, it was not required to search for records maintained by other federal government agencies and therefore its failure to forward the plaintiff's request to the FBI or the BATFE does not render the searches inadequate. *See Gordon v. Courter*, __ F. Supp. 2d __, __, 2015 WL 4602588, at *5 (D.D.C. July 31, 2015)

---

[3]  The plaintiff followed the defendant's recommendation and "has requested those documents from the local arresting District of Attorney's office, to no avail."  Pl.'s Opp'n at 6.

(finding that the Criminal Division of the Department of Justice was not obligated to search databases maintained by the FBI and the EOUSA); *Allen v. U.S. Secret Serv.*, 335 F. Supp. 2d 95, 98 (D.D.C. 2004) (finding that search was adequate even though certain records had been destroyed pursuant to the agency's document retention policy); *see also Jones-Edwards v. Appeal Bd. of NSA*, 196 F. App'x 36, 38 (2d Cir. 2006) (concluding that an "agency is not obliged to conduct a search of records outside its possession or control").

The plaintiff's next challenge to the EOUSA's searches pertains to the purging of her criminal case file. Because the file was purged on February 14, 2011, before the date on which her sentence was reduced, the plaintiff asks, "What did DOJ rely on to reduce her sentence if her records were purged 'before' the resentencing date?" Pl.'s Opp'n at 6. Accordingly, she "contends that there must be documents pertaining to her case which were not purged" before resentencing. *Id.* However, the plaintiff offers nothing but mere speculation as to the existence of responsive records, and this unsupported assertion does not overcome the defendants' showing. *See Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006) (finding the requester's "assertion that an adequate search would have yielded more documents is mere speculation" and affirming district court's decision that agency's search procedure was "reasonably calculated to generate responsive documents"); *Concepción v. FBI*, 606 F. Supp. 2d 14, 30 (D.D.C. 2009) (finding that the plaintiff's "speculation as to the existence of additional records . . . does not render the search[] inadequate").

### C. The EOUSA Properly Withheld Information Under FOIA Exemption 7(C)

FOIA Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure would cause an enumerated harm.

5 U.S.C. § 552(b)(7); *see FBI v. Abramson*, 456 U.S. 615, 622 (1982). "To show that . . . documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between [an] investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks and citations omitted). Here, it is apparent from the plaintiff's FOIA request itself that the responsive records were compiled for law enforcement purposes, namely, the criminal prosecution of the plaintiff.

FOIA Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In determining whether this exemption applies to particular information, the Court must balance the interest in privacy of individuals mentioned in the records against the public interest in disclosure. *See ACLU v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011). The privacy interest at stake belongs to the individual, not the government agency, *see DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-65 (1989), and "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity," *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984). When balancing an individual's privacy interest against the public interest in disclosure, "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. DOJ*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Comm.*, 489 U.S. at 773). It is a FOIA requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant. *See Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

Under FOIA Exemption 7(C), the EOUSA withheld the "identities of special agents and the direct phone number of the prosecutor." Boseker Decl. ¶ 18. The declarant explains that the release of this information "could subject [these individuals] to an unwarranted invasion of personal privacy by efforts to gain further access to [these individuals] or to personal information about them, leading to harassment, harm, or exposure to unwanted and/or derogatory publicity and inferences arising from their connection to the case." *Id.* Moreover, the declarant represents that the agents' and the prosecutor's "[i]ndividual duties and assignments are not public and the publicity that would likely arise from disclosure would seriously impede, if not totally jeopardize law enforcement effectiveness in subsequent cases, even subjecting these individuals to harassment or other harm." *Id.* Lastly, the declarant states that these individuals have not "consented to disclosure, nor has any public interest been asserted so as to overwhelm the substantial privacy interests protected by application of this exemption." *Id.*

The plaintiff has not referenced FOIA Exemption 7(C) or addressed the defendants' legal arguments for withholding the agents' identities and the prosecutor's telephone number. As to this ground for withholding information, the Court therefore will grant the defendants' summary judgment motion as conceded. *See, e.g., Neuman v. United States*, 70 F. Supp. 3d 416, 422-23 (D.D.C. 2014). But even if the plaintiff had not conceded the matter, the Court finds that, based on the EOUSA's supporting declaration, the decision to withhold the special agents' identities and the prosecutor's direct telephone number is proper. *See, e.g., Brown v. FBI*, 873 F. Supp. 2d 388, 405 (D.D.C. 2012) (approving the withholding under FOIA Exemption 7(C) of the names and telephone numbers of government employees and other third parties); *Sellers v. DOJ*, 684 F. Supp. 2d 149, 158-59 (D.D.C. 2010) (approving the withholding under FOIA Exemption

11

7(C) of the names and identifying information, including telephone numbers, about FBI Special Agents).

### D.  The EOUSA Released All Reasonably Segregable Information

If a record contains some information that is exempt from disclosure, any reasonably segregable information not exempt from disclosure must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions.  5 U.S.C. § 552(b); *see Trans-Pacific Policing Agreement v. U.S. Customs Serv.,* 177 F.3d 1022, 1026-27 (D.C. Cir. 1999) (citation omitted).  The Court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof."  *Powell v. U.S. Bureau of Prisons,* 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of Cal. v. U.S. Dep't of the Army,* 611 F.2d 738, 744 (9th Cir. 1979)).

The declarant avers that each responsive record "was evaluated . . . to determine if any information could be segregated and released."  Boseker Decl. ¶ 19.  As a result of this review, no documents have been withheld in full, and of the twelve pages of records released to the plaintiff, only five pages were redacted.  *See generally id.*, Attach. H.  Thus, based on the supporting declarations and Vaughn Index filed in this case, the Court concludes that the EOUSAs adequately specified "which portions of the document[s] are disclosable and which are . . . exempt."  *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).

### III.  CONCLUSION

The EOUSA has established that its searches for records responsive to the plaintiff's FOIA request were reasonable and that that it properly withheld information not provided to the

plaintiff under FOIA Exemption 7(C).  The defendants' motion for summary judgment therefore will be granted.  An Order is issued separately.

DATE:  September 25, 2015                              /s/
                                                                      REGGIE B. WALTON
                                                                      United States District Judge